**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Equal Employment Opportunity Commission, </br></br> Plaintiff, </br></br> vs. </br></br> Navajo Health Foundation–Sage Memorial Hospital, Inc., </br></br> Defendant. | No. CV-06-2125-PCT-DGC </br></br> **ORDER** |

Defendant has filed a motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. Dkt. #25. Plaintiff has responded and Defendant has replied. Dkt. ##27, 32. The Court will grant Defendant's motion.[1]

**I.    Background.**

Plaintiff Equal Employment Opportunity Commission filed a complaint against Defendant Navajo Health Foundation-Sage Memorial Hospital, Inc. ("Sage Hospital"). Plaintiff brought this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.

---

[1] Defendant's request for oral argument is denied because the parties have thoroughly discussed the law and evidence and oral argument will not aid the Court's decision. *See Mahon v. Credit Bur. of Placer County, Inc.*, 171 F.3d 1197, 1200 (9th Cir. 1999).

§ 2000e et seq. Plaintiff alleges that Defendant discriminated against several employees based on their race and national origin. Plaintiff further alleges that Defendant retaliated against the employees after they complained and filed EEOC charges. Plaintiff seeks to correct these alleged unlawful employment actions and to secure appropriate relief for the aggrieved parties. Dkt. #1.

**II.    Rule 12(b)(1) Standard.**

A Rule 12(b)(1) motion to dismiss may assert a lack of subject matter jurisdiction. *Thornhill Publ'g Co. v. Gen. Tel. & Elecs.*, 594 F.2d 730, 733 (9th Cir. 1979). In resolving such a motion, the Court is not limited to the allegations in the pleadings. The Court "may consider the evidence presented with respect to the jurisdictional issue and rule on that issue, resolving factual disputes if necessary." *Id.* The parties' memoranda in this case cite factual materials that will be addressed below.

**III.   Analysis.**

"Title VII prohibits employers from engaging in discriminatory practices. Congress, however, exempted 'Indian tribes' from the scope of the definition of 'employer' as used in Title VII." *Pink v. Modoc Indian Health Project, Inc.*, 157 F.3d 1185, 1188 (9th Cir. 1998) (quoting 42 U.S.C. § 2000e(b)). The purpose of this "tribal exemption, like the purpose of sovereign immunity itself, [is] to promote the ability of Indian tribes to control their own enterprises." *Id.* (citing *Dille v. Council of Energy Res. Tribes*, 801 F.2d 373, 375-76 (10th Cir. 1986)); *see* 110 Cong. Rec. 13702 (1964) (statement of Sen. Mundt).

Defendant argues that it falls within the "Indian tribe" exemption from Title VII and that the Court therefore lacks subject matter jurisdiction. Dkt. #25. In determining whether Defendant is a "tribe" under Title VII, the Court "must keep in mind the . . . 'settled principle of statutory construction that statutes passed for the benefit of dependent Indian tribes are to be liberally construed, with doubtful expressions being resolved in favor of the Indians.'" *Giedosh v. Little Wound Sch. Bd., Inc.*, 995 F. Supp. 1052, 1056 (D.S.D. 1997) (quoting *Three Affiliated Tribes of the Fort Berthold Reservation v. World Eng'g, P.C.*, 467 U.S. 138, 149 (1984)).

The Court concludes that Sage Hospital, like the Modoc Indian Health Project in *Pink*, serves as an arm of a sovereign Indian tribe and therefore falls within the scope of Title VII's "tribe" exemption. In *Pink*, a former employee of the Modoc Indian Health Project ("Modoc") brought suit against Modoc for alleged violations of Title VII. Modoc was a non-profit corporation created by two federally recognized Indian tribes. Modoc was organized to provide health services to tribal members pursuant to the Indian Self-Determination and Education Assistance Act ("ISDEAA"), Pub. L. No. 93-638, 88 Stat. 2004 (1975) (codified as amended at 25 U.S.C. § 450 et seq.). The district court dismissed the suit for lack of subject matter jurisdiction. The Ninth Circuit affirmed, concluding that Modoc was a tribe for purposes of Title VII because it was organized to control a collective tribal enterprise and its board of directors consisted of two representatives from each tribe. *Pink*, 157 F.3d at 1188 (citing *Dille*, 801 F.2d at 375-76).

Sage Hospital, like Modoc, is controlled by a federally recognized Indian tribe, the Navajo Nation. The Navajo Nation includes political subdivisions called "chapters." 2 N.N.C. § 1; 26 N.N.C. §2(6). Under the Navajo Nation Code, chapters are considered to be the Navajo Nation itself and therefore enjoy sovereign immunity. 1 N.N.C. §§ 552(E), 553(A). Sage Hospital was formed by eight Navajo chapters to serve the medical needs of their members. The hospital's board of directors includes one representative from each of the eight chapters. The directors must be enrolled members of the Navajo Nation and voting members of the chapters they represent. Dkt. #26 at 7-12.

Plaintiff does not dispute that Sage Hospital is wholly owned and controlled by members of the Navajo Nation. *See* Dkt. #25-4 at 16; Dkt. #28-2 Ex. 9. Plaintiff instead argues that this fact does not show that Sage Hospital is controlled by the Navajo Nation. But Plaintiff presents no legal authority in support of this argument. *See* Dkt. #27 at 6. Because the hospital has been formed by eight political subdivisions of the Navajo Nation, and those eight chapters select and are represented by members of the hospital's board of directors, the Court finds that the Navajo Nation exercises sufficient control over the hospital to render it a tribal entity for purposes of Title VII. *See Pink*, 157 F.3d at 1188; *Hagen v.*

*Sisseton-Wahpeton Cmty. Coll.*, 205 F.3d 1040, 1042-43 (8th Cir. 2000) (college served as an arm of the tribe where its board of trustees consisted of one enrolled member from each of the tribe's seven districts); *see also Dille*, 801 F.2d at 376 ("Because the council is entirely comprised of the member tribes and the decisions of the council are made by the designated representatives of those tribes, [the council] falls directly within the scope of the Indian tribe exemption that Congress included in Title VII."); *compare Myrick v. Devils Lake Sioux Mfg. Corp.*, 718 F. Supp. 753, 753-55 (D.N.D. 1989) (defendant corporation was not a tribal entity where the tribe owned 51% of the defendant and a Delaware corporation owned the other 49%).[2]

Sage Hospital is a "tribal organization" within the meaning of the ISDEAA. The statute defines the term "tribal organization" as the recognized governing body of an Indian tribe or "any legally established organization of Indians which is controlled, sanctioned, or chartered by such governing body[.]" 25 U.S.C. § 450b(l). Sage Hospital is a legally established organization of Indians recognized by the Navajo Nation. Dkt. #25-4 at 3. Indeed, the Navajo Nation Council has identified Sage Hospital as a "tribal organization" in formal resolutions and has authorized the hospital to enter into contracts to provide health services to tribe members pursuant to the ISDEAA. *Id.* at 1-5.

Sage Hospital's status as a "tribal organization" under the ISDEAA supports the conclusion that the hospital serves as an arm of the Navajo Nation and therefore falls within the scope of the Title VII "tribe" exemption. *See id.* at 1187-88. "Congress sought to achieve essentially the same goal when it enacted the ISDEAA as when it excluded 'tribes' from the operation of Title VII. Both the ISDEAA and the Title VII 'tribe' exemption

---

[2]Plaintiff argues that the hospital is not controlled by the Navajo Nation because, prior to 2006, two members of the ten-member board were selected by the other board members and were not required to be enrolled members of the tribe. Dkt. #27 at 6-7. The Court does not find this fact significant. Plaintiff presents no evidence that the two board members selected in this manner were not Navajo. And even if they were not, the board still would have been under the control of the 80% of board members selected by and representing the eight Navajo Nation chapters that formed the hospital.

- 4 -

attempt to aid tribal entities in their efforts to conduct their own affairs and economic activities with as much autonomy as possible." *Pink*, 157 F.3d at 1188-89 (citing *Dille*, 801 F.2d at 374).

Plaintiff makes precisely the opposite argument – that the ISDEAA and Title VII have nothing to do with each other and that the hospital's status as a tribal organization for purposes of ISDEAA therefore says nothing about the applicability of the Title VII exemption. In support, Plaintiff quotes language from *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 154 F.3d 1117, 1123 (9th Cir. 1998), that appears to be directly contrary to the language quoted above from *Pink*. The court in *Dawavendewa* stated that "whatever Congress decided to do with respect to amending the [ISDEAA] in 1994 has little if anything to do with what it intended when it drafted Title VII thirty years earlier." *Id*. at 1123. *Pink* stated that Congress sought to achieve "essentially the same goal when it enacted the ISDEAA as when it excluded 'tribes' from the operation of Title VII." *Pink*, 157 F.3d at 1188-89. For two reasons, the Court chooses to follow *Pink*'s interpretation of the ISDEAA. First, the decision in *Dawavendewa* concerned the Indian preference exemption found in 42 U.S.C. §2000e-2(i), a provision not at issue in this case. *Pink*, on the other hand, concerned the "Indian tribe" exemption at issue here, as found in 42 U.S.C. § 2000e(b). Second, other courts have reached the same conclusion as *Pink* with respect to the intent of the ISDEAA and Title VII. *See Dille*, 801 F.2d at 374.

Plaintiff's reliance on *NLRB v. Chapa De Indian Health Program, Inc.*, 316 F.3d 995 (9th Cir. 2003), is also misplaced. None of Chapa-De's board of directors were tribal members and nearly half of Chapa-De's patients and employees were non-Indians. *Id*. at 997. Sage Hospital, by contrast, is controlled exclusively by tribal members, 99% of its patients are Navajo Indians, and 75% of its employees are Native American. Dkt. #25-4 at 3. This case is closer to *Pink* than *Chapa De*. *See Smith v. Salish Kootenai Coll.*, 434 F.3d 1127, 1135 (9th Cir. 2006) (en banc) (concluding that college where board of directors was selected by tribe, college was treated under tribal law as a tribal corporation, most students were Native American, and the college favored Native Americans in hiring was closer to

*Pink* than *Chapa De*); *Dillon v. Yankton Sioux Tribe Housing Auth.*, 144 F.3d 581, 583 (8th Cir. 1998) (holding that a housing authority established by a tribal council pursuant to its powers of self-government was a "tribal agency" immune from Title VII suits); *see also EEOC v. Karuk Tribe Housing Auth.*, 260 F.3d 1071, 1080 (9th Cir. 2001) (finding the ADEA inapplicable to Indian tribes and holding that a housing authority "function[ed] as an arm of the tribal government and in a governmental role" where 99% of the housing units were occupied by Indian families and 83% of the employees were Indians).

The Court finds Plaintiff's other arguments unpersuasive. "[T]he fact that [Sage Hospital] is incorporated as a nonprofit corporation under [Arizona] law does not affect its status as an 'Indian tribe.'" *Giedosh*, 995 F. Supp. at 1059; *see Duke*, 199 F.3d at 1125 ("[T]he mere organization of . . . an entity under state law does not preclude its characterization as a tribal organization as well."); *Smith*, 434 F.3d at 1134-35 (holding that a college incorporated under state law was a "tribal entity or an arm of the tribe"). Similarly, the fact that the hospital is located on reservation land owned by a private entity is not relevant given the other facts in this case. *See Pink*, 157 F.3d at 1189 ("Modoc did not lose its exemption simply because it performed the self-determination contract for health services off the reservation."); *Dille*, 801 F.2d at 374-76 (finding tribal consortium exempt under Title VII even though the plaintiffs were employees in the group's Denver office). Finally, the fact that two of Defendant's employees have made statements inconsistent with its present position does not alter the facts addressed in this order or control the Court's legal analysis.

**IV. Conclusion.**

As this Circuit recognized in *Pink*, "there are entities that are sufficiently identified with the tribe that they may be considered to be 'tribal.'" *Id.* (citing *Pink*, 157 F.3d at 1187-88). Sage Hospital is such an entity, and therefore is entitled to the exemption found in 42 U.S.C. § 2000e(b). The Court will dismiss this action for lack of subject matter jurisdiction.

**IT IS ORDERED:**

1. Defendant Navajo Health Foundation–Sage Memorial Hospital, Inc.'s motion to dismiss (Dkt. #25) is **granted**.

2. The Clerk shall **terminate** this action.

DATED this 6th day of September, 2007.

*David G. Campbell*
David G. Campbell
United States District Judge